# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

ASHLEY BATISTE

VERSUS

WALMART INC., F/K/A WALMART
STORES, INC., ET AL.

CIVIL ACTION

NO. 21-488-JWD-SDJ

## RULING AND ORDER

This matter comes before the Court on the *Second Motion for Summary Judgment* (Doc. 31) filed by Defendants Walmart Inc., Wal-Mart Louisiana, L.L.C., and National Union Fire Insurance Company of Pittsburgh, PA (collectively, "Walmart" or "Defendants"). Plaintiff Ashley Batiste opposes the motion ("Plaintiff" or "Batiste"). (Doc. 35.) Walmart has filed a reply. (Doc. 36.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the *Second Motion for Summary Judgment* is denied.

## I.    BACKGROUND

This suit is in regard to Plaintiff's slip and fall in the housewares department at Walmart Supercenter #1102 in Baker, Louisiana, on July 25, 2020. (Doc. 31-2 at ¶¶ 1–2; Doc. 35-1 at ¶¶ 1–2.) Plaintiff is unsure of what sort of liquid she slipped on. (Doc. 31-3 at 80.) The parties seem to both agree that there was a Walmart employee in the general vicinity of the spill but dispute the exact location of that employee. (*See* Doc. 31-2 at ¶ 12; Doc. 35-1 at ¶ 12.) Marquis Hampton ("Hampton"), a witness to the incident, provided in his initial witness statement that the substance Batiste slipped on was water. (Doc. 35-7.) However, in an affidavit created thereafter, Hampton described the liquid as having a "reddish tint" and appearing "to be congealed meat juice." (Doc. 35-4 at 1.) In Hampton's deposition, he acknowledged this inconsistency and seemed unable to

accurately recall all events related to the incident given the long period of time between the incident and when his deposition was taken. (*See* Doc. 50-1, Hampton Depo at 88–100).)

Magistrate Judge Johnson largely explained the procedural history in this matter when ruling on the *Motion to Reopen Fact Witness Discovery to Depose Marquis Hampton, Motion for Extension to Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment, and Motion to Compel Deposition of Marquis Hampton* ("*Motion to Reopen Fact Witness Discovery*") (Doc. 16). (*See* Doc. 23.) As Magistrate Johnson explained:

> Plaintiff filed her Petition for Damages in the 19th Judicial District Court, East Baton Rouge Parish, Louisiana, on July 23, 2021, and Defendants removed to this Court on August 24, 2021. (R. Doc. 1 at 1). A Scheduling Order was issued on November 9, 2021, including close of fact discovery on June 30, 2022, and trial beginning April 3, 2023. (R. Doc. 7).
>
> Defendants filed a Motion for Summary Judgment on September 7, 2022 (R. Doc. 13), and Plaintiff filed a Memorandum in Opposition on September 28, 2022 (R. Doc. 15). Attached to Plaintiff's Opposition is an Affidavit by Marquis Hampton, a witness to the slip and fall incident. (R. Doc. 15-4). Defendants filed [a *Motion to Reopen Fact Witness Discovery* (Doc. 16)] in response to the inclusion of Hampton's affidavit in Plaintiff's memorandum.
>
> At the time of the accident, Hampton gave a witness statement to Defendant Walmart. (R. Doc. 15-7). In Defendants' initial disclosures, Hampton is listed among individuals who may have discoverable information, and his phone number is included; his statement at the time of the incident is included in the list of documents in Defendants' possession. (R. Doc. 22-2 at 1-2). Defendants allege that, despite repeated calls throughout the discovery period, Hampton was unavailable to both parties. (R. Doc. 16-1 at 2). Plaintiff was, however, able to obtain an affidavit from Hampton after Defendants filed their Motion for Summary Judgment. (R. Doc. 15-4).
>
> Upon learning of the affidavit, Defendants attempted to set up a deposition with Hampton, who gave dates he was available, but the discovery period had already closed, and Plaintiff's counsel did not consent to reopening fact discovery for the purpose of a deposition. (R. Doc. 16-1 at 3). Defendants claim that they did not have a chance to depose Hampton during the discovery period. (R. Doc. 16-1 at 3). Defendants thus filed [the *Motion to Reopen Fact Witness Discovery* (Doc. 16)] asking the Court to reopen fact discovery for the purpose of compelling a deposition of Hampton and to extend time to reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment in order to incorporate that deposition.

(*Id.* at 1–2 (footnotes omitted).)

The Magistrate Judge denied Defendants' *Motion to Reopen Fact Witness Discovery* (Doc. 16) on January 17, 2023. (*See* Doc. 23.) At the February 9, 2023 status conference, the District Judge denied Defendants' *Motion for Summary Judgment* without prejudice, allowing Defendants to depose Marquis Hampton after the March 6, 2023 settlement conference with the Magistrate Judge. (Doc. 27.) However, no additional discovery would be allowed without Court approval. (*Id.*)

Defendants subpoenaed Hampton on April 10, 2023, to appear for his April 28, 2023 deposition, but Hampton failed to appear despite being subpoenaed. (Doc. 30-1 at 6–7.) On May 8, 2023, Defendants then filed a *Motion to Strike Marquis Hampton from Testifying as Witness or Offering Evidence* (Doc. 30) and a *Second Motion for Summary Judgment* (Doc. 31).

At the November 7, 2023 status conference, Defendants expressed to the Court their intent to file a Motion for Contempt of Court in regard to Hampton's failure to comply with the subpoena executed against him. (Doc. 42.) In light of this, the Court denied Defendants' *Motion to Strike Marquis Hampton from Testifying as Witness or Offering Evidence* (Doc. 30) without prejudice to Defendants refiling the motion after having the contempt hearing. (Doc. 42.) The Court also expressed to the parties that in the event Hampton appeared at the contempt hearing, the Court would allow the parties to depose Hampton after the hearing in the courthouse. (*Id.*)

On December 4, 2023, Defendants filed a *Motion to Hold Marquis Hampton in Contempt* (Doc. 44) and also sent Hampton two separate subpoenas: one for the contempt hearing and one for the deposition that would occur thereafter, (Docs. 46, 46-1). The Court held the contempt hearing on February 8, 2024. (Doc. 47.) Hampton appeared before the Court, and the Court held him in contempt, fining him $500. (*Id.*) Following the hearing, the parties deposed Hampton. (*Id.*)

In light of the parties being able to depose Hampton, the Court allowed the parties a period of time in which they could supplement their briefing in regard to the present *Second Motion for Summary Judgment*. (Doc. 49.) The parties have done so. (Docs. 50–51.)

## II.    RULE 56 STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden and must identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' " *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted)).

However, "the movant 'need not *negate* the elements of the nonmovant's case.' " *Id.* (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc))). That is, "[a] movant for summary judgment need not set forth evidence when the nonmovant bears the burden of persuasion at trial." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019) (citing *Celotex*, 477 U.S. at 323 ("we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim.")). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Id.* (citing *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002)).

If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material

facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a *genuine issue* for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (citations and internal quotations omitted).

Ultimately, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (cleaned up). Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (citations omitted).

## III. DISCUSSION

Because of Louisiana's civilian tradition, "Louisiana's 'Constitution, codes, and statutes' are of paramount importance to its judges." *Jorge-Chavelas v. La. Farm Bureau Cas. Ins. Co.*, 917 F.3d 847, 851 (5th Cir. 2019) (quoting *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003)).

> Unlike stare decisis, which can flow from one decision, in the civil system numerous court decisions must agree on a legal issue to establish *jurisprudence constante* (French for constant jurisprudence). And even when that consensus exists in the caselaw, it remains only persuasive authority for the *Erie* guess; "we are not strictly bound" by the decisions of Louisiana's intermediate courts.

*Id.* The Louisiana Supreme Court has laid out the following guidelines for interpreting statutes:

> Legislation is the solemn expression of the legislative will; thus, the interpretation of legislation is primarily the search for the legislative intent. *Cat's Meow, Inc. v. City of New Orleans,* 98–0601, p. 15 (La.10/20/98), 720 So.2d 1186, 1198; *La. Safety Ass'n of Timbermen Self–Insurers Fund v. La. Ins. Guar. Ass'n,* 09–0023, p.

8 (La.6/26/09), 17 So.3d 350, 355–56. *See also* La. R.S. 24:177(B)(1). When a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent. La. R.S. 1:4. The starting point for interpretation of any statute is the language of the statute itself. *See, e.g., Cat's Meow,* 98–0601, p. 15, 720 So.2d at 1198; *Timbermen,* 09–0023, p. 8, 17 So.3d at 356. Additionally, "all laws pertaining to the same subject matter must be interpreted in *pari materia,* or in reference to each other." *See, e.g., State v. Williams,* 10–1514 (La.3/15/11), 60 So.3d 1189, 1191; La. C.C. art. 13. When, on the other hand, a statute is not clear and unambiguous, or its application leads to absurd consequences, we rely on secondary rules of statutory interpretation to discern the meaning of the statute at issue. *See Red Stick Studio Dev., L.L.C. v. State ex rel. Dep't of Econ. Dev.*, 10–0193, p. 10 (La.1/19/11), 56 So.3d 181, 187–88 (quotation omitted). In such cases, the statute "must be interpreted as having the meaning that best conforms to the purpose of the law. Moreover, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole." *Id.*

*Pierce Founds., Inc. v. Jaroy Const., Inc.*, 2015-0785 (La. 5/3/16); 190 So. 3d 298, 303.

Under La. R.S. § 9:2800.6(A), "A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage." "To prove a negligence claim against a merchant a plaintiff has the burden to show (1) the condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable, (2) the merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence, and (3) the merchant failed to exercise reasonable care." *Leonard v. Sam's W., Inc.*, No. 11-846, 2013 WL 121761, at *2 (M.D. La. Jan. 9, 2013) (Vance, J.) (citing La. R.S. § 9:2800.6(B)).

At issue in Defendants' *Second Motion for Summary Judgment* is the second element discussed above: whether Walmart created the condition that allegedly caused Plaintiff's accident or whether it had actual or constructive notice of the condition. (Doc. 31-1.)

### A.  Parties' Arguments

#### 1.  *Memo in Support*

According to Defendants, Plaintiff cannot establish that Defendants created the condition because she testified to the fact that she does not know where the liquid that she slipped on came from. (Doc. 31-1 at 5 (citing Doc. 31-3 at 78–80).) Further, Plaintiff cannot establish actual notice because she does not know and has no evidence to support that any Walmart employee knew about the liquid on the floor, and the closest Walmart employee in proximity to the liquid was stocking shelves in another aisle. (*Id.* at 6 (citing Doc. 31-3 at 68, 80–84; Doc. 13-3 at 149).) Likewise, Plaintiff cannot establish constructive notice because under La. R.S. § 9:2800.6(C)(1), "The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition." (*Id.* at 7 (emphasis omitted).)

Defendants argue that mere speculation is not enough for Plaintiff to meet her burden of constructive notice, and instead she must make a positive showing that the condition existed prior to the fall. (*Id.* at 7–8 (citing *Adams on Behalf of D.K. v. Wal-Mart Stores, Inc. Store #542*, 18-1706 (La. App. 1 Cir. 9/27/19); 286 So. 3d 452, 454–55).) In this case, Plaintiff admitted that she does not know how long the substance was on the floor prior to the accident and has failed to put on any other positive evidence that the substance was on the floor for some period of time prior to the accident. (*Id.* at 12.) Likewise, Plaintiff admitted "that she did not know if any Walmart employee knew the substance was on the floor and failed to clean it up before her incident." (*Id.* at 15 (emphasis omitted).) As such, Plaintiff has failed to meet her burden of establishing that Walmart has created the condition that caused her accident and/or had actual or constructive knowledge that the liquid was on the floor. (*Id.*)

### 2. *Opposition*

In opposition, Plaintiff argues that there are genuine issues of material fact as to whether Defendants had constructive notice of the condition that existed prior to the accident. (Doc. 35 at 4.) Plaintiff asserts that "[t]he presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition." (*Id.*) Marquis Hampton, an independent witness, "attests that the liquid appeared congealed and looked like it had been there for a period of time." (*Id.* at 5 (citing Doc. 35-4).) While determining whether a period of time is long enough for a merchant to have known about a condition is a question of fact for the jury, there is a prerequisite of some period of time. (*Id.* at 6 (citing *David v. Dollar Tree Stores, Inc.*, 19-36 (La. App. 5 Cir. 10/2/19); 282 So. 3d 329, 332).) Hampton's testimony coupled with a Walmart employee's proximity to the spill satisfies this burden, and thus "genuine issues of material fact exist as to the temporal element, constructive notice and failure to exercise reasonable care as defined by La. R.S. 9:2800.6(C)(1)." (*Id.*)

### 3. *Reply*

In reply, Defendants argue that Plaintiff has not met her burden of proving that Walmart had constructive notice of the condition that caused Plaintiff's accident. (Doc. 36 at 1.) First, Hampton has been an uncooperative and unavailable witness. (*Id.*) Hampton provided a witness statement at the scene, and Plaintiff has obtained an affidavit from him. However, the parties were unable to depose Hampton. (*Id.* at 2.) Even after this Court reopened fact discovery for the limited purpose of deposing Hampton, Defendants were still unable to depose him. (*Id.* at 2–3.)

> Between February 9, 2023, and April 28, 2023, Walmart made attempts to depose Mr. Hampton. Walmart was unable to successfully serve Mr. Hampton for his April 5, 2023 deposition, which was set for March 9, 2023. Additionally, Mr. Hampton

failed to appear for his properly noticed deposition on April 28, 2023, just days before the deadline to refile the Motion for Summary Judgment.

(*Id.* at 3 (footnotes omitted).)

Further, Hampton's affidavit is not witnessed and is incompetent summary judgment evidence. (*Id.* (citing *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988).) Without this affidavit, "Plaintiff has not and cannot come forward with any positive evidence to create a genuine issue of material fact on the issue of constructive notice to defeat Walmart's motion for summary judgment." (*Id.* at 4.) Even if the Court could rely on Hampton's affidavit, the attestations therein directly contradict the evidence in the record and are unreliable. (*Id.* at 4–7.) Namely, Hampton described the liquid as "water" in his initial witness statement but described the liquid as "congealed" in his affidavit. (*Id.* at 4–5.)

Defendants also argue that Plaintiff has only put forth speculative evidence of how long the substance was on the ground. (*Id.* at 7.) For these reasons, Plaintiff has not met her burden of proving constructive notice that the spill had been on the floor for some time, and summary judgment should be granted in Defendants' favor. (*Id.* at 10.)

### 4. *Defendants' Supplement*

After deposing Hampton, Defendants supplemented their summary judgment briefing. (Doc. 50.) They argue that the Court should not consider Hampton's affidavit as summary judgment evidence under the "sham affidavit" doctrine. (*Id.* at 1.) Defendants first explain how Hampton did not remember a lot of the details from the day of the accident and that he confirmed that the liquid substance was water. (*Id.* at 2 (citing Doc. 50-1, Hampton Depo at 63).) They then argue that Hampton's affidavit should be stricken and/or afforded no weight because it contradicts his initial witness statement and was drafted to defeat the present summary judgment motion. (*Id.* at 3.) Under the sham affidavit doctrine, "a party [cannot] defeat a motion for summary judgment

[by] using an affidavit that impeaches, without explanation, sworn testimony." (*Id.* at 4 (citing *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996).) Though typically applied when affidavits are executed after deposition testimony, the doctrine is not exclusive to a particular sequence of events. (*Id.* at 4–5.) According to Defendants, as long as inconsistent statements are made in the deposition and affidavit, the Court can choose to not consider the affidavit as competent summary judgment evidence. (*Id.* at 5.)

Defendants go on to argue that

[a]fter Mr. Hampton's deposition, it is clear that the affidavit executed in September 2022 was drafted solely to defeat Walmart's Motion for Summary Judgment. Mr. Hampton did not know what certain words in his affidavit meant and could not confirm the truth of the statements purportedly made by him in the affidavit. Because Mr. Hampton's deposition testimony contradicts the affidavit, Mr. Hampton's affidavit should not be considered competent summary judgment evidence. This Court should take Mr. Hampton's deposition testimony as true: he **did not know** how the water got on the ground, **did not know** who caused the water to be on the floor, **had no information** as to how long the water was on the ground, and **did not know** whether any Walmart employee knew that there was water on the floor before Plaintiff's incident.

(*Id.* (citing Doc. 50-1, Hampton Depo at 66–67).)

### 5. Plaintiff's Supplement

In her supplemental brief, Plaintiff argues that Hampton's deposition testimony supports his affidavit and that there is a genuine issue of material fact as to the temporal element of Defendants' constructive knowledge. (Doc. 51 at 1.) Plaintiff points to Hampton's deposition testimony in which he explained that his affidavit was true, representative of the facts he remembered on the night of the incident, and that his memory of the events was better when he drafted the affidavit than during his deposition. (*Id.* at 2 (citing Doc. 50-1, Hampton Depo at 96–97).) She then argues that the statements in Hampton's deposition and affidavit create genuine

issues of material fact, and the inconsistencies in his testimony should be weighed by the fact finder. (*Id.* at 4.) Therefore, the Court should deny summary judgment. (*Id.* at 5.)

## B.  Applicable Law

Again, "[u]nder the relevant statute for premises liability, Louisiana Revised Statute Annotated § 9:2800.6(B)(2), a business either must have created or had [actual or] constructive notice of the hazardous condition prior to the accident in order to be liable for injuries to a customer." *Lee v. Dolgencorp, L.L.C.*, 784 F. App'x 285 (5th Cir. 2019) (mem.) (per curiam).

" 'Constructive notice' means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care." La. R.S. § 9:2800.6(C)(1). To prove constructive notice, Plaintiff has the burden to "come forward with 'positive evidence' showing the damage-causing condition existed for some period of time and that such time was sufficient to place the merchant defendant on notice of its existence." *Batiste v. United Fire and Cas. Co.*, 17-482 (La. App. 5 Cir. 3/14/18); 241 So. 3d 491, 498 (citing *Flowers v. Wal-Mart Stores, Inc.*, 12-140 (La. App. 5 Cir. 7/31/12); 99 So. 3d 696, 699). "[M]ere speculation that the condition may have existed for some period of time is insufficient." *Id.* (citing *Babin v. Winn-Dixie La., Inc.*, 00-0078 (La. 6/30/00); 764 So. 2d 37, 40).

The Louisiana Supreme Court has held that the phrase "such a period of time" constitutes a temporal element that must be shown by a plaintiff in a slip-and-fall case, and La. R.S. § 9:2800.6 does not permit an inference of constructive notice absent a showing of this temporal element. *White v. Wal–Mart Stores, Inc.*, 97-0393 (La. 9/9/97); 699 So.2d 1081, 1084.  The Louisiana Supreme Court continued:

> Though there is no bright line time period, a claimant must show that "the condition existed for such a period of time ... " Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question; however, there remains the prerequisite showing of some time period. A

claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute. Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall. This is not an impossible burden.

*Id.* at 1084–85. The *White* court also discussed a prior decision in *Welch v. Winn-Dixie Louisiana, Inc.*, observing that the *Welch* court found that the claimant had carried her burden by, *inter alia*, "showing the absence of written inspection procedures, the lack of written documentation of the performance of inspections, and the lack of company directives on a consistent inspection policy . . . ." *White*, 699 So. 2d at 1084 (internal quotations omitted) (citing *Welch v. Winn-Dixie Louisiana, Inc.*, 94-2331 (La. 5/22/95); 655 So. 2d 309, 318). *White* expressly overruled *Welch*, observing that the *Welch* court's reliance on "a lack of uniform, mandatory clean-up procedures" had improperly shifted the burden to the merchant to prove that it acted reasonably. *Id.* at 1085. "The [*Welch*] Court stated, 'The length of time a foreign substance is on the floor diminishes in relevance if the defendant merchant has no mechanism in place to discover such a hazard.' While the length of time may arguably diminish in relevance under some circumstances, it certainly does not diminish to the point of being eliminated." *Id.* (citing *Welch*, 655 So. 2d at 318).

Similarly, in *White* itself, the Louisiana Court of Appeal had written:

[W]e do not agree that the trial judge erred in finding that defendant negligently allowed the spill to remain for such a period of time that it would have been discovered if defendant had exercised reasonable care. Since defendant did not produce any witnesses at trial to show that a sweep occurred nearer in time to the accident, we must conclude that the trial judge was not clearly wrong in finding that plaintiff bore her burden of proof and in finding defendant liable.

*White v. Wal–Mart Stores, Inc.*, 96-617 (La. App. 5 Cir. 1/15/97); 688 So.2d 100, 103.

The Louisiana Supreme Court disapproved of this analysis and reversed, stating:

Again, there is no provision in La. R.S. 9:2800.6 that allows shifting the burden to the defendant to disprove his culpability as the lower court clearly did. As

previously discussed, defendant need not come forward with positive evidence of the absence of the spill. Such would require the defendant to prove a negative and is not within the clear and unambiguous language of the statute. Furthermore, the lack of evidence showing the non-existence of the spill is not evidence of the existence of the spill, but merely the absence of evidence. Because it is the claimant's burden to prove its existence for some period of time, the absence of evidence can not [sic] support the claimant's cause of action. Rather, the absence of evidence is fatal to the claimant's cause of action.

*White*, 699 So. 2d at 1086.

The Louisiana Supreme Court has held that an employee being in the general area where the fall occurred is not enough on its own to establish the temporal element. For example, in *Kennedy v. Wal-Mart Stores, Inc.*, the Louisiana Supreme Court held:

In the instant case, plaintiff produced evidence showing that the general area where he fell was within view of a customer service podium and that it was raining on the evening in question. However, plaintiff presented absolutely no evidence as to the length of time the puddle was on the floor before his accident. Therefore, plaintiff did not carry his burden of proving Wal–Mart's constructive knowledge of the condition. Because plaintiff failed to prove an essential element of his cause of action under La. R.S. 9:2800.6, the trial court committed legal error in allowing plaintiff to recover, and the court of appeal erred in affirming this judgment. Accordingly, we must reverse.

98-1939 (La. 4/13/99); 733 So. 2d 1188, 1191. Likewise, the Louisiana Fifth Circuit Court of Appeal held the following in *Zeringue v. Wal-Mart Stores, Inc.*:

When the plaintiff relies on constructive notice, which includes a mandatory temporal element, the plaintiff must come forward with positive evidence showing that the condition that caused the damage existed for some period of time, and that such time was sufficient to place the merchant defendant on notice of its existence. While there was testimony relative to the existence of the grapes on the floor, a simple showing that the condition existed is insufficient for a finding of liability and recovery. The presence of cashiers in the vicinity does not, alone, constitute constructive notice, unless Mrs. Zeringue can show that they knew, or should have known, of the existence of the condition. She has not done so, and, rather, relied on speculation. Thus, she has failed to produce factual support sufficient to establish that she will be able to satisfy her evidentiary burden of proof at trial regarding the temporal element of notice.

10-589 (La. App. 5 Cir. 3/29/11); 62 So. 3d 276, 279 (footnotes omitted). *See also Burns v. Sedwick Claims Mgt. Servs., Inc.*, 14-421 (La. App. 5 Cir. 11/25/14); 165 So. 3d 147, 154 ("The affidavit does not contain any support to prove that, on the date of the accident, the alleged cause of plaintiff's fall (the clear liquid) remained on the floor for a period of time sufficient to create constructive notice as required under La. R.S. 9:2800.6. Further, although the affidavit attests that the location where plaintiff slipped and fell was within feet of the cashier registers and customer service desks, La. R.S. 9:2800.6 specifically provides that an employee's presence in the vicinity of the accident alone is not sufficient to prove constructive notice. Mr. Allison's affidavit does not meet plaintiff's burden of proof concerning the temporal element required under La. R.S. 9:2800.6.")

In *Leverson v. BJ's Restaurants, Inc*., this Court granted summary judgment in a slip and fall case because plaintiff had failed to create a question of fact as to whether defendants "either created the condition or had actual or constructive notice of" water on the floor of a restaurant. No. 18-751, 2019 WL 6841974, at *6 (M.D. La. Dec. 16, 2019) (deGravelles, J.). There was no evidence that defendants created the hazardous condition, and the employee demonstrated he had no actual knowledge of the condition. *Id.* Relevant here, for constructive notice, this Court found:

> [N]o reasonable juror could conclude that Defendants knew or should have known about the water a few feet from the door solely because it *could have* been tracked from the bathroom. *See* [*Mohammad v. P.F. Chang's China Bistro*, 548 F. App'x 236, 238–39 (5th Cir. 2013)]. In any event, again, the time requirement has not been met, as there is no evidence as to how long the water was on the floor, much less that it was there so long that Defendants should have discovered it in the exercise of reasonable care. *See Lee*, 784 F. App'x 285; *Mohammad*, 548 F. App'x at 239 ("The Mohammads have similarly presented no evidence that the liquid in this case was on the floor for any length of time—let alone that that time was sufficient that the restaurant have discovered its existence through the exercise of ordinary care. As a result, there is no issue of material fact regarding constructive notice.").

*Id.*

### C. Analysis

The Court finds that Plaintiff has satisfied her burden of creating a genuine issue of material fact as to Defendants' constructive knowledge of the liquid in the aisle prior to the incident. The parties seem to both agree that there was a Walmart employee in the general vicinity of the spill but dispute the exact location of that employee. (*See* Doc. 31-2 at ⁋ 12; Doc. 35-1 at ⁋ 12.) However, an employee being in the general vicinity of the condition that caused Plaintiff's fall is not enough on its own to satisfy constructive notice. *See, e.g.*, *Kennedy*, 733 So. 2d at 1191; *Zeringue*, 62 So. 3d at 278–79; *Burns*, 165 So. 3d at 154. Plaintiff must also put on positive evidence of how long the condition existed prior to her fall. *See Batiste*, 241 So. 3d at 498.

Plaintiff clearly states in her deposition that she does not know how long the liquid was on the ground for prior to her fall:

> Q.    Any idea how long the substance was on the floor?
>
> A.    No, sir.

(Doc. 31-3 at 80.) However, Marques Hampton's affidavit speaks to the fact that the substance was "congealed," which would suggest that the substance had been on the floor for some significant period of time. (*See* Doc. 35-4 at 1.)

Although Hampton's affidavit was not witnessed and was notarized by Plaintiff's attorney, the affidavit was sworn, thus making it valid. As *Wright and Miller* explains,

> Rule 56(c)(4) provides that when affidavits are used to support or oppose a summary-judgment motion, they "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." These requirements are mandatory. The erroneous admission or exclusion of an affidavit that does not meet the Rule 56(c)(4) standard does not require the reversal of a summary judgment if the error is harmless, however.

***

> Prior to 1976, an affidavit that merely purported to have been made under penalties of perjury was not admissible; it had to be sworn to before an authorized officer. Since 1976, affidavits no longer need to be notarized and will be admissible if they are made under penalties of perjury; only unsworn affidavits will be rejected. Although a verified pleading, like any pleading, may be presented to the court in a summary-judgment proceeding, it will not be accorded the probative force of an affidavit unless it meets the requirements of Rule 56(c)(4). This means that the content of the pleading must be asserted on the personal knowledge of the pleader, set forth facts that would be admissible in evidence, and show affirmatively that the pleader is competent to testify to the matters pleaded. Few pleadings will satisfy these requirements, even when verified.

10B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (4th ed. 2023).

The cases that Defendants cite for the proposition that an unwitnessed affidavit is incompetent summary judgment evidence do not hold such. *See Nissho-Iwai Am. Corp.*, 845 F.2d 1300; *Flowers v. Abex Corp.*, 508 F. Supp. 1230 (N.D. Ill. 1984). In *Nissho-Iwai American Corp. v. Kline*, the Fifth Circuit was faced with the factual scenario of an affidavit being notarized but unsworn:

> It is a settled rule in this circuit that an unsworn affidavit is incompetent to raise a fact issue precluding summary judgment. A statutory exception to this rule exists under 28 U.S.C. § 1746, which permits unsworn declarations to substitute for an affiant's oath if the statement contained therein is made "under penalty of perjury" and verified as "true and correct." Kline's affidavit is not in substantial conformity with either formula because, as drafted, it allows the affiant to circumvent the penalties for perjury in signing onto intentional falsehoods. Kline never declared her statement to be true and correct; therefore, her affidavit must be disregarded as summary judgment proof. *See also Flowers v. Abex Corp.*, 580 F.Supp. 1230, 1233 n. 2 (N.D.Ill.1984) (merely notarizing signature does not transform document into affidavit that may be used for summary judgment purposes).

*Nissho-Iwai Am. Corp.*, 845 F.2d at 1306–07. Likewise, the court in *Flowers v. Abex Corp.* faced the same factual scenario as in *Nissho-Iwai American Corp. v. Kline*:

> The court wishes to note that it has disregarded the unsworn "affidavits" of Flowers' co-workers. Merely notarizing the signature does not transform a letter into an affidavit; nor do the letters conform to the requirements of 28 U.S.C. § 1746. Also, the court is not in complete agreement with Abex's characterization of several passages of Flowers' deposition testimony, for instance, at Abex's memo filed 11/23/83, pp. 6–8.

16

*Flowers*, 580 F. Supp. at 1233 n.2. Neither case suggests that an unwitnessed but notarized affidavit that is sworn is improper summary judgment evidence.

Defendants argue that even if Hampton's affidavit is valid in form, the Court should not consider it because the affidavit directly contradicts other evidence in the record, including his initial witness statement. (Doc. 36 at 4.) While Hampton's affidavit does contradict assertions in his initial witness statement—namely that Hampton now claims the substance was "congealed" as opposed to his initial description of it being "water"—his witness statement was not sworn or taken under oath or penalty of perjury, as compared to his affidavit which is a sworn declaration.

The Court does not find that these contradictions deem his affidavit—a sworn document—unreliable. The Court disagrees with Defendants that the sham affidavit doctrine should be applied in this case and instead will consider Hampton's affidavit as competent summary judgment evidence. Though Hampton was initially an uncooperative witness, the parties were able to depose Hampton on February 8, 2024. (Doc. 47.) The Court has thoroughly reviewed this deposition and the parties' positions in their supplemental briefs but disagrees with Defendants' position.

"It is well settled that [the Fifth Circuit] does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc.*, 72 F.3d at 495. As the Fifth Circuit has explained:

> [The sham affidavit doctrine] provides [that] a "party may not manufacture a dispute of fact merely to defeat a motion for summary judgment". *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000). This is because, if "a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony", "the utility of summary judgment as a procedure for screening out sham issues of fact" would be greatly diminished. *Id.* (quoting *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)).

*Hacienda Recs., L.P. v. Ramos*, 718 F. App'x 223, 235 (5th Cir. 2018).

Here, Hampton made a representation in his affidavit that contradicts his initial witness statement. However, as explained above, his affidavit is a sworn declaration while his initial witness statement is not. Therefore, Hampton's affidavit does not "impeach[], without explanation, sworn testimony." *S.W.S. Erectors, Inc.*, 72 F.3d at 495. Further, Hampton makes clear in his deposition that his affidavit was his own declaration and that Plaintiff did not coerce him into making certain representation in his affidavit as to the condition of the liquid she slipped on:

```
Q.   Did they -- when you spoke to someone at
Mr. Van Earl's office, did they tell you that
Ms. Batiste said that it was a reddish –

A.   Oh, no.

Q.   -- liquid?

A.   No.

Q.   Okay.  So where did the red -- reddish
liquid come from?  This information that it
was a –

A.   That's my affidavit.  This is what I told
them.  Yeah.

Q.   Okay.  But that was incorrect, right?

A.   I'm not sure cause I don't remember.

                    ***

EXAMINATION BY MR. VAN EARL:

Q.   Mr. Hampton, I know this was done a year
ago.  The affidavit that you signed, you signed
it in front of me.

A.   Right.

Q.   All right.  Do you remember that being
e-mailed to you before so that you could
review it and make any corrections to it?
```

18

A.    Yes.

Q.    All right.  And when it was e-mailed to
you, when I met with you, you said you had
opened up the e-mail and looked at it?

A.    Uh-huh.

Q.    And the actual information that was being
drawn up you talked with Jennifer –

A.    Right.

Q.    -- in my -- my paralegal in my office.

A.    Yes.

Q.    All right.  Did Jennifer tell you what to
say in the affidavit?

A.    No.

                        * * *

Q.    Okay.  So we go back to that there -- it
looked congealed, meaning it looked like it had
been there a long time.

A.    Right.

Q.    Why is that in your affidavit?

A.    Because, I mean, you know how to -- because,
actually, you know how liquid stuff sit there and
it gets thick or slippery, and like it' s been
there for a little minute.  That' s what I -- I
witnessed.  Just like when you see on the picture
like the footprint.

(Doc. 50-1, Hampton Depo at 73–74; 83–84; 99–100).) For these reasons, the Court does not find

the sham affidavit doctrine to be implicated in this case. The affidavit in question does not impeach

any sworn testimony conducted before it, and there is no evidence to suggest that Plaintiff

improperly obtained this affidavit in order to manufacture issues of fact to defeat a motion for summary judgment.

The Court acknowledges the inconsistencies within Hampton's deposition testimony and the Defendants' argument that Hampton seemed unable at his deposition to fully recall all the events related to the incident. Though these points raise significant and serious credibility issues, Hampton's contradictory statements by way of his initial witness statement, affidavit, and deposition testimony should be weighed by the jury, not the Court at the summary judgment stage. These contradictions present issues of fact as to how long the substance was on the ground prior to the incident that only the jury can decide. If the substance was congealed, one can conclude that the substance was on the ground for a significant period of time. However, if the substance was water, it would be more difficult to determine how long the substance was there, as water does not congeal.

As such, the Court finds that there is a genuine issue of material fact as to how long the substance was on the ground for prior to Plaintiff's fall. Thus, since there is a genuine issue of material fact as to the temporal element, which in turn speaks to whether Defendants had constructive knowledge of the liquid prior to the incident, summary judgment is therefore inappropriate, and Defendants' motion is denied.

**IV.   CONCLUSION**

Accordingly,

**IT IS ORDERED** that the *Second Motion for Summary Judgment* (Doc. 31) filed by Defendants Walmart Inc., Wal-Mart Louisiana, L.L.C., and National Union Fire Insurance Company of Pittsburgh, PA is **DENIED WITH PREJUDICE.**

Signed in Baton Rouge, Louisiana, on <u>March 27, 2024</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**